# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SELENA SANDOVAL, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 15 C 8158 |
| CHICAGO HOUSING AUTHORITY, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Selena Sandoval sued the Chicago Housing Authority (CHA) in Illinois state court, asserting claims under 42 U.S.C. § 1983 for violations of the U.S. Constitution's Fourth and Fourteenth Amendments, the United States Housing Act of 1937, 42 U.S.C. § 1437d, and the Illinois Constitution's due process clause. Sandoval also asserts state-law claims in which she seeks writs of mandamus or certiorari. CHA removed the case to federal court. It has moved to dismiss Sandoval's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons stated below, the Court dismisses Sandoval's federal claims and remands the remainder of this case to the Circuit Court of Cook County.

## Background

The Court takes the following facts from Sandoval's complaint, accepting them as true for purposes of the present motion. *See Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 700 (7th Cir. 2014). Several years ago, Sandoval applied for

a voucher to receive subsidized housing under Section 8 of the United States Housing Act (USHA), as amended, 42 U.S.C. § 1437f.  In compliance with Congress's directive that the Secretary of Housing and Urban Development (HUD) "may provide assistance to public housing agencies for tenant-based assistance," *id.* § 1437f(o)(1)(A), HUD established the Housing Choice Voucher (HCV) program, through which "HUD pays rental subsidies so eligible families can afford decent, safe, and sanitary housing."  24 C.F.R. § 982.1(a)(1).  State or local government entities called public housing agencies (PHAs) typically administer the HCV program.  *Id.*  CHA is the agency that administers the HCV program in Chicago.

Like all other applicants for vouchers under this program, Sandoval was placed on a waiting list after initially submitting her paperwork.  After calling her from the waiting list and meeting with her to collect information and documentation, CHA determined that Sandoval was eligible for assistance and issued her a voucher in early July 2014.  The voucher's expiration date was November 7, 2014.

The same day she received her voucher, Sandoval requested that CHA "port" her voucher to the Housing Authority of Cook County (HACC) so that she could use the voucher to secure housing in a suburban area outside of CHA's jurisdiction.  Sandoval did not receive her ported voucher from HACC until October 9, 2014, less than a month before it would expire.  She submitted paperwork to a landlord in early November, but the landlord did not submit the voucher to HACC prior to the voucher's expiration date.  It is unclear from the complaint whether the landlord denied Sandoval housing or she withdrew her application.  One way or another, however, Sandoval did not end up in the suburban apartment or in any other subsidized housing.  Rather, she and her three

minor children now share a single bedroom in a friend's house.

Sandoval did not request an extension of her voucher expiration before its expiration date. When she learned in December 2014 that her paperwork was not submitted to HACC prior to the voucher's expiration date, she contacted CHA to request an extension of her already-expired voucher. CHA never responded in writing to Sandoval's request, and Sandoval has not ever received either an extension on her original voucher or a new voucher. She has also not been afforded any opportunity for review or a hearing (formal or informal) to contest what she refers to as "CHA's refusal to respond to her request for an extension or the assumed expiration of her voucher." Compl., dkt. no. 1-1, ¶ 29.

Sandoval filed suit in state court alleging that by adhering to the voucher's deadline, failing to grant an extension, and providing no informal review or hearing before extinguishing her right as an eligible applicant for subsidized housing, CHA violated her due process rights under the United States and Illinois Constitutions. She also alleged that this constituted an unreasonable seizure of property in violation of the Fourth Amendment to the United States Constitution and that terminating her eligibility violated section 1437d(k) of the USHA. In addition to seeking declaratory, injunctive, and monetary relief, Sandoval sought state-law writs of mandamus and certiorari directing renewal or replacement of her voucher. CHA timely removed the case to this Court and has now moved to dismiss Sandoval's complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

## Discussion

When considering a motion to dismiss for failure to state a claim, the Court

accepts the facts stated in the complaint as true and draws reasonable inferences in favor of the plaintiff. *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010). To state a viable claim, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

CHA argues that all five of Sandoval's claims should be dismissed. It contends that Sandoval's due process claims should be dismissed because she does not have a protected property interest. It also urges the Court to dismiss Sandoval's Fourth Amendment claim because she was not deprived of any possessory interest in property. As for her claim under section 1437d(k), CHA argues that this statute does not provide Sandoval a private right of action. Finally, CHA asks the Court to dismiss Sandoval's requests for writs of mandamus or certiorari, arguing that they are relics of this case's origination in state court, and that even if these remedies are available to Sandoval, the Court should not exercise jurisdiction over her state law claims if her federal claims are dismissed.

**A.     Federal constitutional claims (counts 1 and 2)**

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To demonstrate a procedural due process violation of a property right, the plaintiff must establish that there is (1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Khan v.*

4

*Bland*, 630 F.3d 519, 527 (7th Cir. 2010) (internal citation and quotations omitted).

In her complaint, Sandoval asserts that she was deprived of property without due process when CHA "terminated Plaintiff's participation in the Voucher Program." Compl., dkt. 1-1, ¶¶ 46, 47. The interest she claims CHA infringed is her "property interest in [her] continued participation in the Voucher Program." *Id.* ¶ 43. The complaint asserts two separate alleged due process violations. First, Sandoval claims that she was denied due process because she was not given notice of the decision to end her "continued participation" or an "opportunity for a pre-termination hearing (informal review)." *Id.* ¶ 46. Second, she claims that because expiration is not listed in the HUD regulations addressing proper grounds for termination—namely, 24 C.F.R. §§ 982.552(b), 982.552(c), and 982.553(a)—it is not a valid basis for terminating participation in the voucher program. Compl. ¶ 47. Accordingly, Sandoval contends, terminating her participation due to the expiration of her voucher violates due process.

Under HUD regulations, a person is only a "participant" in the voucher program once a Housing Assistance Payments (HAP) contract has been executed; the regulations provide that at that point, a person's participation cannot be terminated without notice and an informal hearing. "Applicants," meanwhile, are entitled under the regulations only to an informal review of any determination that they are not eligible for benefits under the statute. CHA contends first that Sandoval is not a "participant" in the program and so cannot lay claim to any of the procedural safeguards that prevent CHA from terminating assistance to persons for whom CHA has already executed a HAP contract. It then goes on to argue that Sandoval has not stated a due process claim because HUD regulations specifically state that a PHA is not required to provide

5

informal review or an informal hearing for any "determination not to approve an extension or suspension of a voucher term." 24 C.F.R. §§ 982.554(c)(4), 982.555(b)(4).

If CHA is suggesting that by complying with HUD regulations, it provided adequate process before revoking Sandoval's purported property right, its argument is misguided. Regulatory compliance does not necessary equate to constitutional compliance. If Sandoval has a protectable property interest, the issue is not whether HUD regulations required CHA to provide her with notice and the opportunity to be heard before terminating her eligibility for subsidized housing, but rather whether the Due Process clause does so.

Based on CHA's reply, however, it appears that the real thrust of its argument is that the statutory and regulatory scheme does not create a protected property interest because it creates no expectancy that an individual who is found eligible and granted a voucher will retain her eligibility beyond the voucher's term. Offering her own reading of the regulatory framework, Sandoval disagrees. She points out that 24 C.F.R. § 982.552(a)(2) sets forth the four necessary steps for HCV assistance to commence, the first of which is the issuance of a voucher. She then explains that "if the PHA has refused to issue a new voucher, it has necessarily refused to enter into a HAP contract," Pl.'s Resp. Mem., dkt. no. 18, at 17, which the regulations define as a denial of assistance. Sandoval argues that because 24 C.F.R. § 982.554 "requires that the PHA provide notice and an informal review for any decision denying assistance to the applicant, the regulations have created a property right not just in the eligibility determination, but in every step of the process, from obtaining a place on the waiting list to entering into a HAP contract." *Id.*

6

"The Fourteenth Amendment's Due Process Clause does not itself create any property interests. It protects property interests that 'are created and . . . defined by existing rules or understandings that stem from an independent source such as state law.'" *Dibble v. Quinn*, 793 F.3d 803, 808 (7th Cir. 2015) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). Other potential sources of property interests include statutes, regulations, ordinances, and express or implied contracts. *See Covell v. Menkis*, 595 F.3d 673, 675 (7th Cir. 2010). An interest is protected under the Due Process clause if a person has a "legitimate claim of entitlement" to it; a person must have more than a "unilateral expectation of it" in order for the interest to be protected. *Roth*, 408 U.S. at 577.

Read together, the USHA, HUD regulations, and CHA's Administrative Plan show that Sandoval—an individual who was deemed eligible and given a voucher whose term lapsed before she executed a HAP contract or requested an extension of the voucher's expiration date—does not have a legitimate claim of entitlement to execute a HAP contract and receive benefits under the HCV program. Congress delegated broad administrative authority to the Secretary of Housing and Urban Development to administer a voucher program. *See* 42 U.S.C. § 1437f(o)(1)(A) ("The Secretary may provide assistance to public housing agencies for tenant-based assistance using a payment standard established in accordance with [the requirements of this statute]. The payment standard shall be used to determine the monthly assistance that may be paid for any family . . . ."). The statute provides that "the public housing agency may elect to screen applicants for the program in accordance with such requirements as the Secretary may establish." *Id.* § 1437f(o)(6)(B). HUD regulations state that vouchers

7

distributed under this program have terms, which the PHA may extend at its own discretion "in accordance with PHA policy as described in the PHA administrative plan," 24 C.F.R. § 982.303, and that a PHA's decision to not extend a voucher's term is not subject to informal review or hearing. *Id.* §§ 982.554(c)(4), 982.555(b)(4).

The CHA Administrative Plan makes clear that "the PHA does not have any liability to any party by the issuance of the voucher, and the voucher does not give the family any right to participate in the PHA's housing choice voucher program." CHA Housing Choice Voucher Program Admin. Plan, § 5-11.D. It further provides that pursuant to CHA policy, a voucher has an initial term of ninety days, and the CHA "will approve an extension in one or more increments not to exceed 60 calendar days upon written request from the family" detailing "reasons beyond the family's control" for extending the voucher's term. *Id.* § 5-11.E. "All requests for extensions to the voucher term must be made in writing and submitted to the CHA prior to the expiration date of the voucher (or extended term of the voucher)." *Id.*

It may be that an individual with a valid, unexpired voucher has a protected property interest in the voucher during its limited term. But that is not the issue here. Rather, Sandoval asserts an entitlement to non-term-limited voucher ownership. Simply put, neither the USHA nor HUD regulations provide voucher holders with an unqualified right to either subsidized housing or continued eligibility for benefits. On the contrary, the regulations make it clear that vouchers are term limited, and CHA policy makes clear that the right to utilize a voucher to secure subsidized housing is conditional upon its holder using the voucher within the original term or an extension that is properly requested and granted. The regulations establish that vouchers have limited terms, that

decisions whether to extend them are discretionary, and that such decisions are not subject to informal review or informal hearings; all of these provisions would be superfluous if read any other way.

Sandoval contends that the Seventh Circuit recognized a property interest under similar circumstances in *Holbrook v. Pitt*, 643 F.2d 1261 (7th Cir. 1981). *Holbrook*, however, is of almost no utility in this case. That case dealt with a different program under Section 8 whereby an owner of a housing development executes a contract with HUD pursuant to which the owner makes determinations regarding tenants' eligibility for subsidized housing. Sandoval asserts that she is like the plaintiffs in *Holbrook* "who did not or will not receive the benefit of housing assistance," *id.* at 1276, but this is not so. The plaintiffs in *Holbrook* already lived in assisted units, and they were deemed third-party beneficiaries of the Section 8 contracts in question. *Id.* at 1276–79. In other words, the plaintiffs in that case had a property interest that was created by contract, and they were deprived of that interest when a party to that contract breached it. *See also Simmons v. Drew*, 716 F.2d 1160, 1162 (7th Cir. 1983) (contracts create a property interest in continued assistance, so tenants must be given notice and an opportunity to be heard before their benefits are terminated). Because Sandoval readily admits that no contract exists in this case, her claimed property interest is nothing like the one the Seventh Circuit found in *Holbrook*.

Sandoval also argues that applicants for subsidized housing have protected property interests in their potential eligibility for the program, which she claims is the reason HUD regulations provide for informal review when applicants are deemed ineligible. Sandoval argues that it would make no sense for the Constitution to require,

9

and the regulations to provide, greater protection for applicants' right to prove their eligibility than for eligible persons' right to retain it. This argument lacks merit. First, the fact that the regulations provide informal review for ineligibility determinations in no way suggests that any sort of hearing, informal or otherwise, is required to satisfy due process. *See Charleston v. Bd. of Trustees of Univ. of Ill. at Chicago*, 741 F.3d 769, 773 (7th Cir. 2013); *see also, Olim v. Wakinekona*, 461 U.S. 238, 250–51 (1983) ("Process is not an end in itself. . . . The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice, the State does not create an independent substantive right.") Moreover, it is not at all clear that the law supports Sandoval's contention that applicants for subsidized housing have a protected property interest. It is true, as Sandoval notes, that some courts have held that applicants for Section 8 housing have a protected property interest in demonstrating their eligibility for benefits under the USHA. *See, e.g.*, *Ressler v. Pierce*, 692 F.2d 1212, 1214–16 (9th Cir. 1982); *Vandermark v. Hous. Auth. of City of York*, 663 F.2d 436, 438 (3d Cir. 1981); *see also Baldwin v. Hous. Auth. of City of Camden*, 278 F. Supp. 2d 365, 379–80 (D.N.J. 2003) (relying on *Ressler* in holding that applicants possess a property interest in Section 8 vouchers). This is so, they say, because the statute limits the discretion that HUD and PHAs may exercise in administering the application process, and because Section 8 was specifically intended to benefit low-income individuals in need. The Seventh Circuit, however, has expressly (and repeatedly) rejected the reasoning of *Ressler*. *See Fincher*, 606 F.3d at 335; *Eidson v. Pierce*, 745 F.2d 453, 460 (7th Cir. 1984).

Most important, however, is the fact that an applicant's right to prove eligibility is

10

very different from a voucher-holder's purported right to use her term-limited voucher whenever she wishes, even if it is beyond the voucher's limited term.  Even if the Court were to assume an applicant has a protected property interest in her eligibility for benefits, that would have little bearing on whether a voucher grantee has a protected property interest in her continued candidacy for housing after her voucher has lapsed.

Ultimately, Sandoval cannot show that she has a legitimate claim of entitlement to continued eligibility because the regulations clearly stipulate that any decision to grant or deny an extension of a voucher's term is discretionary.  "A legitimate claim of entitlement to warrant a due process hearing occurs only when the statutes [or] regulations in question establish a framework of factual conditions delimiting entitlements which are capable of being explored at a due process hearing."  *Fincher*, 606 F.3d at 334 (internal citation and quotations omitted).  "A property interest of constitutional magnitude exists only when the state's discretion is clearly limited such that the plaintiff cannot be denied the interest unless specific conditions are met." *Brown v. City of Mich. City*, 462 F.3d 720, 729 (7th Cir. 2006) (internal citation and quotations omitted).  The regulations unequivocally state that decisions whether to extend a voucher's term are left to the administering PHA's discretion.  There is no framework, then, against which to measure the propriety of CHA's decision not to grant Sandoval an extension of the voucher term.

For these reasons, Sandoval lacks a property interest and thus cannot state a claim for violation of her due process rights under the Fourteenth Amendment.  This also dooms Sandoval's claim under the Fourth Amendment, which prohibits the government from unreasonably inflicting "meaningful interference with an individual's

possessory interests in property." *Soldal v. Cook Cty.*, 506 U.S. 56, 61 (1992). Accordingly, the Court dismisses counts 1 and 2.

**B.     Section 1437d(k) claim (count 3)**

CHA contends that Sandoval fails to state a claim under the USHA because the Act neither expressly nor impliedly creates a private right of action. Sandoval does not seem to argue that the statute expressly provides a private right of action. To determine whether a statute impliedly provides a private right of action, a court examines the statutory text and considers whether "Congress intended to confer individual rights upon a class of beneficiaries." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002). The Supreme Court has listed factors that guide this inquiry, including (1) whether "Congress intended that the provision in question benefit the plaintiff"; (2) whether "the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence"; and (3) whether the statute "unambiguously impose[s] a binding obligation" due to its being "couched in mandatory, rather than precatory, terms." *Blessing v. Freestone*, 520 U.S. 329, 340–41 (1997). Courts will not imply a right of action in the absence of a strong indication of congressional intent to create one. *See Endsley v. City of Chicago*, 230 F.3d 276, 281 (7th Cir. 2000).

Sandoval argues that she has a private right of action under section 1437d(k), which provides that the Secretary of Housing and Urban Development "shall by regulation require each public housing agency receiving assistance under this chapter to establish and implement an administrative grievance procedure." 42 U.S.C. § 1437d(k). Sandoval points to a case decided in this district in which the court

determined that residents of a residential development could assert a claim under section 1437d(l)(2), which imposes particular requirements on housing authorities to contract with tenants in a specified way. *See Stubenfield v. Chicago Hous. Auth.*, 6 F. Supp. 3d 779 (N.D. Ill. 2013). She also cites other district court decisions addressing different parts of section 1437d and a Supreme Court opinion holding that tenants may bring suit to challenge calculations of utility allowances. *See Wright v. City of Roanoke Redevelopment & Hous. Auth.*, 479 U.S. 418, 427 (1987).

The few appellate courts that have addressed this issue seem to be in agreement that section 1437d(k) provides a private right of action for individuals who seek to challenge whether grievance procedures comply with the statute. *See, e.g.*, *Farley v. Philadelphia Hous. Auth.*, 102 F.3d 697, 702–03 (3d Cir. 1996); *Samuels v. Dist. of Columbia*, 770 F.2d 184, 196 – 98 (D.C. Cir. 1985). But this does not matter, because section 1437d(k) does not provide a private right of action to Sandoval. "[A] statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'" *Lexmark Int'l., Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1388 (2014) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). To fall within a statute's zone of interests, "the plaintiff must establish that the injury he complains of (*his* aggrievement, or the adverse effect *upon him*) falls within the zone of interests sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." *Air Courier Conference of Am. v. Am. Postal Workers Union AFL-CIO*, 498 U.S. 517, 523–24 (1991) (internal citation and quotations omitted). Section 1437d(k) provides grievance procedures only to "tenants," who may utilize the grievance procedure when they stand to suffer from a "proposed adverse

13

public housing agency action." See 42 U.S.C. § 1437d(k). As explained above, Sandoval concedes that she is not an active participant in the HCV program, and that she never became a tenant subject to a HAP contract. Even if a private right of action under this part of the statute might be available to some class of persons, Sandoval is not a part of it.

Sandoval contends that even if no private right of action exists under the statute, the Court should not dismiss her claim that CHA violated the USHA and its regulations because regulatory language suggests that she should have access to judicial redress. The Court disagrees, but even if one were to assume that HUD regulations or CHA's administrative plan are suggestive of a redressable right, Sandoval's argument would fail. "Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001).

For these reasons, the Court dismisses count 3 for failure to state a claim.

**C.   State law claims and requests for writ relief**

The Court has dismissed all claims over which it has original jurisdiction; all that remains are state law claims over which the Court may exercise only supplemental jurisdiction. 28 U.S.C. § 1367(a). In the Seventh Circuit, "the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Fields v. Wharrie*, 672 F.3d 505, 518–19 (7th Cir. 2012). Accordingly, and expressing no views regarding their merit, the Court will remand Sandoval's remaining claims to the Circuit Court of Cook County.

14

**Conclusion**

For the foregoing reasons, the Court grants defendant's motion to dismiss [dkt. no. 13] as to counts 1, 2, and 3. Having disposed of all federal claims in this case, the Court remands the remainder of this action to the Circuit Court of Cook County pursuant to 28 U.S.C. § 1447(c). The Clerk is directed to enter judgment dismissing counts 1, 2, and 3 of plaintiff's complaint and remanding the remainder of the case to the Circuit Court of Cook County.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: January 8, 2016